O. W. POTTER, Appellee, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

**Telegraphs:** DELAY IN DELIVERY: ADMISSION OF EVIDENCE: AFFIRM-
1 ANCE BY OPERATION OF LAW. In an action for delay in delivering a telegram in time for plaintiff to reach his mother's bedside prior to her death, the ruling of the trial court admitting evidence that plaintiff was informed that his mother was calling for him, as bearing on the question of his damages is affirmed on appeal as a matter of law, because of an equally divided court on the question of its admissibility.

**Same:** SUBMISSION OF ISSUE: SUFFICIENCY OF EVIDENCE. Evidence
2 that plaintiff, immediately upon receiving the message announcing his mother's dying condition, arranged and in fact took the first train that would take him to her bedside, was sufficient to carry the question of whether he would have reached her earlier had the message been promptly delivered, to the jury.

**Delivery of telegram:** NEGLIGENCE: PRESUMPTION: EVIDENCE. There
3 was an unreasonable delay in failing to deliver a "sick" message received at 8:30 p. m. until 8:30 the next morning, where the telegraph company kept its office open all night, had three messengers, the sendee lived but five and one-half blocks distant and the message was properly addressed by street and number; and under the statute negligence in failing to make timely delivery is presumed and this presumption is not overcome by an attempted delivery, as disclosed by the evidence, at 9 p. m. of the evening of its receipt.

**Excessive damages.** The damages to be awarded for failure to de-
4 liver a "sick" message, in time to have enabled plaintiff to reach the bedside of his mother prior to her death, is largely a matter of discretion with the jury, and when there is nothing to indicate passion or prejudice the verdict will not be disturbed. A verdict of $1,000 in the instant case is held not excessive.

*Appeal from Superior Court of Cedar Rapids.*— HON. J. H. ROTHROCK, Judge.

FRIDAY, MAY 8, 1908.

ACTION at law, to recover damages for failure to deliver

a message announcing the fatal illness of plaintiff's mother until it was too late for him to reach her bedside before death.   Trial to a jury.   Verdict and judgment for the sum of $1,000.   Defendant appeals.— *Affirmed.*

*Geo. H. Pearson, Carr, Hewitt, Parker & Wright, M. P. Smith* and *Dawley, Hubbard & Wheeler,* for appellant.

*W. E. Steele* and *Rickel, Crocker & Tourtellot,* for appellee.

DEEMER, J.— Plaintiff's mother, who was eighty-six years of age, lived at Leland, in the State of Illinois, and plaintiff with his wife lived in the city of Cedar Rapids, in this State.   Late in the afternoon of August 1, 1905, plaintiff's brother, who lived at Leland, delivered to the defendant a message, addressed to plaintiff, by proper street number, reading as follows: " Mother can't live till morning." This message was received at defendant's office in the city of Cedar Rapids at about 8:40 p. m., August 1st, but was not actually delivered to plaintiff until about 8:30 a. m. August 2d, when it was handed to plaintiff's wife, she receipting therefor at her home in the city of Cedar Rapids.   She immediately telephoned its contents to her husband, and upon receipt thereof plaintiff made proper inquiries to find how he could reach Leland, and was informed that he could not do so except by train leaving at 3:33 a. m., August 3d.   He took that train, reached Leland during that day, and found that his mother had died at 4:55 p. m., August 2d.   Had the message been delivered at any time after its receipt at the Cedar Rapids office, and in season for him to have taken the 3:33 morning train, he might have reached his mother's bedside before she died.   The trial jury found that defendant was negligent in delivering the message, and awarded plaintiff the amount heretofore stated.   The appeal presents four principal questions for our determination.   The instructions

are not set forth; and, as they are not challenged, we must presume that they announced correct principles of law, and, so far as possible, corrected any errors committed during the trial.

Plaintiff was permitted to prove that two or three times just preceding her death his mother called for him, and wanted to know of those in attendance why he did not come, and that this fact was communicated to him almost immediately upon his reaching Leland, causing him great pain and mental anguish. This testimony was objected to as hearsay, incompetent, and immaterial, but the objection was overruled. The courts which have passed upon this character of testimony are in hopeless conflict in their holdings. See *W. U. Co. v. Jackson*, 35 Tex. Civ. App. 419 (80 S. W. 649), and *W. U. Co. v. Mellon*, 96 Tenn. 66 (33 S. W. 725), holding that such testimony is inadmissible, and *Whitten v. W. U. Co.*, 141 N. C. 361 (54 S. E. 289), and *West. Union Co. v. Waller*, Tex. Civ. App. (72 S. W. 264), holding that it is proper to be received, as bearing upon the amount of damages to be awarded. The question was before us in the case of *Collar v. Telegraph Co.*, affirmed without opinion September 27, 1906, and, the members of the court being equally divided in opinion, no pronouncement was made. No change of view has occurred since that time, and the ruling must be affirmed by operation of law.

II. It is contended that plaintiff should have shown not only that he could but that he would have reached Leland before his mother's death had the message been properly delivered. In passing upon this question we must, for reasons already stated, assume that the court correctly stated the law upon this proposition, and that the jury found the facts necessary to a recovery to be as plaintiff claimed them to be. The only point which we may consider in this connection is, was there enough testimony to take the case to a jury upon these

*1. Telegraphs: delay in delivery: admission of evidence: affirmance by operation of law.*

*2. Same: submission of issue: sufficiency of evidence.*

propositions? It very clearly appears from the testimony that, had the message been delivered in time for plaintiff to have taken the 3:33 train on the morning of August 2d, he could have reached his mother some time before she died, and, as we shall see, it was a question for the jury to determine whether or not defendant was negligent in failing to make delivery of the message so that he might have done so. It is true that plaintiff did not testify directly that he would have taken that train had there been time to have done so; but it does appear that, as soon as plaintiff received the message, he instituted immediate inquiries of the proper railway agents as to how he could reach Leland in the most expeditious manner, and that he took the first train which promised to get him to his mother's home. Surely this showing as to what plaintiff did do after the receipt of the message toward reaching his dying mother is sufficient evidence as to what he would have done had the message been delivered the previous evening. At any rate, it was enough to take the question to the jury.

III. The next proposition is that there was not sufficient testimony of delay to justify the submission of defendant's negligence to the jury. Solving this question, we must start with the conceded facts that the message was received at defendant's office in Cedar Rapids not later than 8:40 p. m., August 1st; that it was addressed to plaintiff by street and number, and that he lived but five and one-half blocks from the defendant's office; that the message was not in fact delivered to plaintiff's wife until about 8:30 the next morning, when its contents were telephoned to plaintiff. It also appears, without conflict, that defendant's Cedar Rapids office was open all night, and that it had three messenger boys in service during the entire evening. If this makes out a *prima facie* showing for plaintiff, then there was enough to send the case to a jury. Section 2164 of the Code provides that, in actions such as this, negligence will be presumed upon proof

3. DELIVERY OF TELEGRAM: negligence: presumption: evidence.

of unreasonable delay in the delivery of the message, and that the burden in such cases is upon the defendant to show that the delay was not due to negligence on its part. Appellant contends that this section has no application, for the reason that there was no showing of unreasonable delay. This argument overlooks the conceded facts as to the actual delivery of the message. We shall refer, in a moment, to this proposition, more at length, but it is sufficient now to say that the facts regarding the time of the receipt of the message and of its actual delivery are not in dispute. The message was what is known as a " sick " or " death " one, and the diligence of the defendant in delivering it must be considered with reference to the character thereof. Such messages should be promptly delivered; for, as a rule, they are of much more importance to the parties concerned than those pertaining to business transactions. We are constrained to hold that the circumstances disclosed by the undisputed evidence show an unreasonable delay in the delivery of the message, and that negligence on the part of the company will be presumed. That being true, the case was manifestly for the jury. But, should we hold that the effect of the statute is to do no more than shift the burden of the proof, the same result must follow.

Defendant introduced testimony showing that plaintiff and his wife, being the only members of his family, were away from home, attending a circus on the evening of August 1st, and that he did not return until after 10 o'clock. There is no dispute that one of defendant's messenger boys went to plaintiff's home about 9 o'clock in the evening, and made an attempt to deliver the message. He rapped at all the doors, and, as he says, finding no one at home, went to a nearby butcher shop, where there was light, wrote out a notice that the telegram was in the defendant's office, and stuck it between the door and the jamb of one of the inside doors of plaintiff's house. He also went to the place where plaintiff's sister lived; and, finding a number of dogs near about

and no light or other evidence that the family was at home, he went away, and did not attempt to make delivery there. After this he returned to defendant's office, made his report to the night clerk, and, his time for quitting having arrived, he went home, and gave the matter no further attention. The night clerk took the message, placed it with others which were undelivered, and the same fell into the hands of the day clerk, who came on duty the next morning about 8 o'clock, and was then delivered, as before stated. It further appears that a severe rain came up on the evening of August 1st, at about 9:10, and lasted until 11:15 p. m. the same evening. There was a street car passing defendant's office, which ran past plaintiff's house. There can be no doubt under the testimony that the messenger boy went to plaintiff's house, and attempted to make delivery at about 9 o'clock in the evening; but it also appears that the boy was informed that plaintiff was either at his sister's or at the " show," and that he, the boy, had reason to know and believe that plaintiff was at the circus, and not at his sister's home. This he did not report to his superiors, but did return that he had left the notice as stated by him.

If this were the entire record, we might be inclined to agree with defendant that it had negatived all actionable negligence. But the matter of the leaving of the note or notice in the door is disputed, and plaintiff introduced testimony tending to show that no such note or notice was left. We shall not set out this testimony. Suffice it to say that it was of such a character that a jury might have found that no such note or notice was left, or that, if it was left, it was not in such a place as that it was likely to attract attention. Conceding then, as we must, that the jury found that no such notice was left, we have nothing but the attempted delivery of the message at about 9 o'clock, with no attempt at further delivery until after 8 o'clock the next morning, although the company, through its employés, knew that plaintiff was at the circus, and would return after it

was over.   Add to this the fact that plaintiff's house was
but five and one-half blocks from defendant's office, and that
a street car line passed both doors, we think there was
enough in the record to show defendant's negligence.   In
other words, these facts are not alone sufficient to show, as
a matter of law, that care and diligence, upon the part of the
defendant, which is required.   As supporting these con-
clusions, see *Cowan v. Telegraph Co.,* 122 Iowa, 379; *Brom-
berg v. Laundry Co.,* 134 Iowa, 38; *Sherrill v. Telegraph
Co.,* 116 N. C. 655 (21 S. E. 429); *Cogdell v. Telegraph
Co.,* 135 N. C. 431 (47 S. E. 490); *McPeek v. Telegraph
Co.,* 107 Iowa, 356.   The *McPeek* case is closely in point
on this proposition.

IV.   Lastly, it is said that the verdict is excessive.   It
was for $1,000.   There is no absolute or mathematical rule
whereby to estimate damages in such cases as this.   The
amount to be awarded lies largely in the sound

4. EXCESSIVE
DAMAGES.

discretion of the jury.   Of course, no unjust
or unreasonable verdict should be permitted to stand, nor
will it be, when it appears to have been the result of passion
or prejudice.   We cannot say that the verdict in this case
is so unreasonable that it should be set aside or materially
reduced.   Verdicts for larger sums have been sustained in
many courts.   See the following cases: *W. U. Co. v.
Evans,* 5 Tex. Civ. App. 55 (23 S. W. 998); *W. U. Co. v.
Zane,* 6 Tex. Civ. App. 585 (25 S. W. 722); *W. U. Co. v.
Houghton,* Tex. Civ. App. (26 S. W. 448); *W. U. Co. v.
Piner,* 9 Tex. Civ. App. 152 (29 S. W. 66).   In no case to
which our attention has been called has a verdict for this
amount been set aside as unreasonable or unjust.

No prejudicial error appears, and the judgment must
be, and it is, *affirmed.*